UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| GLOCK, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 4:06-cv-0072-JDT-WGH |
| | ) | |
| | ) | |
| PETER PILZ, BRONNER ONLINE AG, | ) | |
| DER STANDARD | ) | |
| VERLAGSGESELLSCHAFT MBH, | ) | |
| THOMAS KUNRATH, VEREIN ZUR | ) | |
| FÖRDERUNG DER FRIENDS ECONOMY | ) | |
| (FREUNDERLWIRTSCHAFT), THOMAS | ) | |
| SPERLICH, REINHARD PICL-HERK, AND | ) | |
| PETRA FREILER, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON PLAINTIFF'S MOTION TO REMAND (Doc. No. 20) AND DEFENDANT
BRONNER ONLINE AG AND DER STANDARD VERLAGSGESELLSCHAFT MBH'S
MOTION TO DISMISS (Doc. No. 24)[1]**

This matter comes before the court on Plaintiff's motion to remand and

Defendants Bronner Online AG ("Bronner") and Der Standard Verlagsgesellschaft

mbH's ("Der Standard") motion to dismiss.  This case involves allegedly defamatory

German-language material posted online in Austria.  Neither party believes this court

has jurisdiction to hear the case, albeit for very different reasons.  Plaintiff Glock, Inc.

("Glock") believes that the court lacks subject-matter jurisdiction because not every

Defendant joined in removal.  Defendants Bronner and Der Standard believe that the

---

[1] This Entry is a matter of public record and will be made available on the court's web
site.  However, the discussion contained herein is not sufficiently novel to justify commercial
publication.

court lacks personal jurisdiction both because service was improper and because the "minimum contacts" and "reasonableness" aspects of personal jurisdiction required by the Due Process Clause of the United States Constitution are not satisfied as required by the line of Supreme Court cases beginning with *International Shoe Co. v. Washington*, 326 U.S. 310 (1945).

## I.      BACKGROUND[2]

Peter Pilz is a Green Party member of the Nationalrat (one of the houses of the Austrian Parliament).  On February 21, 2006, he posted a "journal entry" on his German-language website.  The entry was originally written in the German language[3] and broadly sketches some poorly supported allegations involving what are described as "Austrian pistols."  Pilz begins his entry with the story of a 60 year-old Catholic priest in Turkey killed by a 16-year old Turk with a Glock.  According to the entry, the Austrian Ministry of the Economy agreed to supply 211,980 Glock pistols to the Iraqi Ministry of the Interior for the Iraqi police force.  However, Pilz claims that this is many more pistols than the Iraqi police force needs and that the excess has ended up on the black market in neighboring Turkey.

---

[2]  Because this case is being decided without an evidentiary hearing all factual disputes are resolved in favor of Plaintiff.  *Logan Prods., Inc. v. Optibase, Inc.*, 103 F.3d 49, 52 (7th Cir. 1996).

[3]  In this entry, all references to the German-language pieces are from the translation provided by the Plaintiff in the exhibits to its complaint.

In addition to appearing on Pilz's own website, the entry also appeared on the website of Der Standard, a German-language newspaper.  Der Standard published its own article on February 22, 2006, both in print and online about Pilz's claims that the Austrian Ministry of the Economy has granted too many export permits, allowing Glock weapons to end up on the streets of Turkey.

On March 3, 2006, Glock, Inc., a Glock manufacturer based in Georgia, sent letters to Pilz, Der Standard, and Verein zur Förderung der Friends Economy ("Friends Economy")[4] explaining why it believed Pilz's entry and Der Standard's article were defamatory and demanding that they be retracted immediately, after which Defendants and Glock could discuss monetary damages.

On April 6, 2006, Glock filed suit in state court in Clark County, Indiana.  So what does all this have to do with Indiana?  Plaintiff Glock, based in Georgia,[5] believes that it was defamed by Pilz, Der Standard and the rest of the Defendants (all Austrian residents).  Pilz's journal entry does mention Kiesler Police Supply ("Kiesler"), a company based in Jeffersonville, Indiana.  According to the article, weapons that were meant to be delivered to Iraq ended up at Kiesler.  Glock's reading of Pilz's entry is that Glock and Kiesler are being accused of conspiring to sell more pistols in Iraq than are

---

[4] Glock alleges that Friends Economy, Thomas Sperlich, Reinhard Pickl-Herk and Petra Freiler are liable for defamatory statements on Pilz's website because "they have voluntarily undertaken responsibility for the accuracy of the articles posted on www.PeterPilz.at." (Compl. ¶ 32.)  Glock alleges that Defendant Bronner is liable for defamatory statements on Der Standard's website because it is "legally responsible" for the site.  (*Id.* at ¶ 33.)

[5] From its corporate disclosure, it appears that Glock, Inc. is not affiliated with the Austrian entity Glock GmbH.

necessary in order to supply a black market in Turkey.[6]  However, Kiesler is not a party to this suit.

On May 9, 2006, Defendants Der Standard and Bronner removed this case to United States District Court for the Southern District of Indiana.  (Doc. No. 1.)  On June 7, 2006, Glock filed a motion to remand, arguing that not all of the Defendants joined the removal.  (Doc. Nos. 19-20.)  Der Standard and Bronner Online countered with a motion to dismiss (Doc. No. 24) for lack of personal jurisdiction on June 19, 2006.  Both motions are fully briefed and the court now rules as follows:

## II.    DISCUSSION

This case involves two motions, one from the Plaintiff challenging the court's subject-matter jurisdiction, the other from two of the Defendants challenging  the court's personal jurisdiction over Defendants.  Ordinarily, comity might compel the court to take up subject-matter jurisdiction first.  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 587-88 (1999) (citing *Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152, 155 (2nd Cir. 1996)).  The Supreme Court has stressed, however, that this is not a hard and fast rule.  *Id.* at 588.  In cases where "personal jurisdiction raises 'difficult questions of [state] law,' and subject-matter jurisdiction is resolved 'as eas[ily] as personal jurisdiction, a district court will ordinarily conclude that 'federalism concerns tip the scales in favor of initially ruling on the motion to remand.'"  *Id.* at 586 (quoting *Allen v. Ferguson*, 791 F.2d 611, 616 (7th

---

[6]  Although another (more plausible) reading of the article is that the Austrian government is to blame for not better managing the supply of Austrian pistols.

Cir. 1986)).  On the other hand, where removal was at least nonfrivolous and deciding personal jurisdiction involves only issues of federal constitutional law, the balance may dictate resolving personal jurisdiction first.  *Id.* at 586-87 (citing *Asociacion Nacional de Pescadores v. Dow Quimica*, 988 F.2d 559, 566-567 (5th Cir. 1993)).

The balance in this case leads the court to analyze the issue of personal jurisdiction first.  Because subject-matter jurisdiction is premised on diversity, this court has personal jurisdiction only if Indiana would have personal jurisdiction.  *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 779 (7th Cir. 2003).  In Indiana, personal jurisdiction is co-extensive with the outer limits of that allowed by the federal Due Process clause.  *See* Ind. Trial R. 4.4(A) ("In addition, a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States.").  Therefore, deciding personal jurisdiction requires only an analysis of federal law.  *LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 967 (Ind. 2006).  For the reasons discussed below, there is also a straight forward solution to this issue of personal jurisdiction.

Because of the peculiar facts of this case, the issue of subject-matter jurisdiction requires an analysis of state law that is not easily resolved.  Plaintiffs argue that removal in this case was improper because only two of the Defendants supported the petition for removal in writing.  A case normally can be removed only if every defendant supports the petition for removal in writing.  *Gossmeyer v. McDonald*, 128 F.3d 481, 489 (7th Cir. 1997).  Bronner and Der Standard counter that none of the Defendants were properly served.  Defendants not properly served in state court at the time the petition for

removal is filed need not join the petition for removal. *P.P. Farmers' Elevator Co. v. Farmers Elevator Mut. Ins. Co.*, 395 F.2d 546, 547-48 (7th Cir. 1968). Therefore, it is of no consequence that the other Defendants did not join the petition.   To determine the validity of service of process prior to removal, a federal court must look to the law of the state under which the service was made. *Allen v. Ferguson*, 791 F.2d 611, 618 n.8 (7th Cir. 1986) (citing 4 C. Wright & A. Miller, *Federal Practice & Procedure* § 1082 at 329-31 (1969)).

In this case, process was served by Plaintiff's counsel sending the complaint and summons via Fed Ex to Defendants.  Indiana Trial Rule 4.1(A)(1) allows service by "other public means by which a written acknowledgment of receipt may be requested and obtained;" however, Trial Rule 4.11 requires the clerk of court to be the one to send it out, not the Plaintiff's counsel.  Plaintiff argues that the "savings" clause of Trial Rule 4.15(F)[7] operates to excuse this defect.  Resolving this issue of state law is more complicated than the federal issue on personal jurisdiction; therefore, the court will proceed directly to the issue of personal jurisdiction.

Personal jurisdiction may be either general or specific.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984).  Glock argues that there is specific jurisdiction based on Defendants' contacts to Indiana regarding this case.  The

---

[7] Trial Rule 4.15(F) states:

No summons or the service thereof shall be set aside or be adjudged insufficient when either is reasonably calculated to inform the person to be served that an action has been instituted against him, the name of the court, and the time within which he is required to respond.

Due Process clause requires both minimum contacts between the Defendants and the forum state and that exercising personal jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Miliken v. Meyer*, 311 U.S. 457, 463 (1940)).  These are sometimes referred to as the "minimum contacts" and "reasonableness" prongs to personal jurisdiction.

Both of these prongs must be satisfied for personal jurisdiction to exist.  *See Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 121-22 (1987) (Stevens, J., concurring in part and concurring in the judgment).  Generally, minimum contacts is addressed first.  *See, e.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985).  But when the only contacts to the forum jurisdiction are through the internet, as in this case, whether a defendant has minimum contacts with the forum is a complicated matter.  *See* Ved P. Nanda and David K. Pansius, 1 Litigation of International Disputes in U.S. Courts § 1:29.  Therefore, the court will address reasonableness first.  *Id.* ("Normally courts address reasonableness last.  Some Internet cases might benefit from addressing this element first. . . . A determination that the exercise of personal jurisdiction would not be reasonable may relieve the court from having to formulate a standard that, once uttered, will govern future cases where the intuitively proper result may not be so obvious.")

Reasonableness requires an evaluation of several factors.  These factors include:

the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief.  [The court] must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies."

*Asahi*,  480 U.S. at 113 (quoting *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

An example of this analysis was conducted in *Asahi Metal Industry Company v. Superior Court of California, Solano County*.  In *Asahi*, a motorcyclist sued the Taiwanese parts-maker of his motorcycle.  The Taiwanese parts-maker in turn filed a cross-complaint against a Japanese supplier.  Although the original claim settled, the cross-claim remained.  The Supreme Court ruled that it was unreasonable to exercise jurisdiction.  *Id.* at 113.[8]  The Court noted that the burden to the defendant was severe in litigating the claim in California.  *Id.* at 114.  After all, not only was there a great distance between California and Japan but also there is a great burden in forcing a Japanese company to litigate its dispute in a foreign jurisdiction.  *Id.*

The Court also found that the interests of the forum state and the plaintiff in obtaining relief did not affect the balance.  *Id.*  Plaintiff in the cross-claim was a Taiwanese corporation and the transaction leading to the litigation took place in Taiwan.

---

[8] Eight justices joined the "reasonableness" portion of the opinion.  *Asahi*, 480 U.S. at 113.  It was the only portion of the opinion that garnered a majority.  Four justices felt that there were minimum contacts, *id.* at 116, and four justices felt that there were not, *id.* at 113.  Justice Scalia, without explanation, did not join the reasonableness portion of the opinion.  Justice Stevens did not express an opinion on minimum contacts because he felt it was unnecessary to reach that issue given that the reasonableness prong was not met.  *Id.* at 121-22.

Further, the plaintiff had not shown that litigating in California was more convenient than in Japan or Taiwan. *Id.* The Court further noted that "the shared interest of the several States in furthering fundamental substantive social policies" in the international context meant that "'[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.'" *Id.* at 115 (quoting *United States v. First Nat'l City Bank*, 379 U.S. 378, 404 (1965) (Harlan, J., dissenting)).

The factors weigh similarly here. All Defendants are residents of Austria. There is a great burden to them in litigating this dispute in Indiana. Not only would the physical distance between Defendants and their legal representatives be great, but there would also be a language barrier. Further, the difference between the legal systems of Austria and Indiana are presumably greater than between Indiana and Georgia, for example.

But all this burden on Defendants might be justified. As the Court in *Asahi* taught: "When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Id.* at 114. But, like *Asahi*, this is a case where the interests of the Plaintiff and the forum in Indiana's jurisdiction are slight. Plaintiff is not a resident of Indiana and the defamatory material on the internet was posted in Austria not Indiana. Indiana's interest in this case is, at best, ephemeral. Plaintiff argues that Defendants are downplaying Indiana's interest in this case. After all, Pilz's article mentions Kiesler, the gun supplier based in Indiana. But Kiesler is not a party to this suit. Presumably, if it feels defamed it can bring its own suit. This is an even less

-9-

meaningful interest than California's interest in *Asahi* where at least there was originally a local Plaintiff and the accident that led to the original suit was in California. A passing reference to a local enterprise that is not a part of this suit is not an interest that makes exercising personal jurisdiction over a foreign citizens and corporations reasonable.

Glock further contends that it does a substantial part of its business in Indiana and that many Hoosiers are interested in its products. It alleges that many Hoosiers read these websites and that Indiana thus has an interest in shielding them from these defamatory statements. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777 (1984). But in this case that interest is minimal. These were German-language publications aimed at an Austrian audience; no Indiana resident subscribes to the print edition of Der Standard or the online version. In a case like *Keeton*, on the other hand, Hustler sold ten to fifteen thousand copies of its magazine in New Hampshire each month. *Id.* at 772. The minimal interest in this case is not enough to outweigh the burden on defendants and make the exercise of personal jurisdiction reasonable.

In finding this, the court notes that the admonition against "extending our notions of personal jurisdiction into the international field" is at least as relevant in this case as it was in *Asahi*. The Court in *Asahi* explained that minimal interests of the forum State should generally not outweigh the burdens on alien defendants:

> the Federal Government's interest in its foreign relations policies, will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State.

480 U.S. at 115.  In this international context, this court is unwilling to assert personal jurisdiction even assuming Indiana has some interest in shielding its citizens from the German-language allegations of an Austrian politician and newspaper.  It is unreasonable to exercise personal jurisdiction given the contacts in this case, regardless of whether or not they would satisfy the "minimum contacts" prong.[9]

As an aside on the international context, the court notes how extraordinary and problematic finding personal jurisdiction in this situation would be.  Pilz is a member of the Austrian Parliament writing about what is arguably a matter of policy of the Austrian government; Der Standard is a newspaper that reported on Pilz's views.  Today almost everything written down ends up on the internet in one form or another.  Does the Due Process Clause allow the internet to transform American courts into worldwide speech regulators every time an American entity gets mentioned?  That is doubtful, but essentially what Plaintiff argues.

III.     CONCLUSION

---

[9]  Bronner and Der Standard filed a "Motion to Strike Certain Evidence Tendered by Plaintiff in Opposition to Motion to Dismiss." (Doc. No. 37.) Even assuming every piece of this evidence were true, jurisdiction would still be unreasonable.  Therefore, the court **DENIES** the motion as moot.

For the reasons set forth above, Defendants' motion to dismiss will be **GRANTED**.

ALL OF WHICH IS ENTERED this 29th day of March 2007.

_____
John Daniel Tinder, Judge
United States District Court

Copies to:

Magistrate Judge William G. Hussman

Douglas B. Bates
STITES & HARBISON, LLP
dbates@stites.com

Daniel P. Byron
BINGHAM MCHALE
dbyron@binghammchale.com

Bradley D Hasler
BINGHAM MCHALE LLP
bdhasler@binghammchale.com

Scott R. Leisz
BINGHAM MCHALE, LLP
sleisz@binghammchale.com

John F. Renzulli
RENZULLI LAW FIRM
jrenzulli@renzullilaw.com